John Gregory **DEATON, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 09–95–286 CR.

Court of Appeals of Texas, Beaumont.

Submitted on Jan. 30, 1997.

Decided June 25, 1997.

Lydia Clay–Jackson, Conroe, for appellant.

Frank H. Bass, Jr., County Attorney, Carrie Galatas, Assistant County Attorney, Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

A jury convicted John Gregory Deaton of misdemeanor Driving While Intoxicated. The court assessed punishment at one hundred eighty (180) days' confinement in the Montgomery County Jail and a fine of $700. The jail time was suspended and Deaton was placed under community supervision for a period of two years. In a single point of error, Deaton complains of the trial court's denial of his oral motion for continuance.

While it is clear the trial began and ended on Monday, June 12, 1995 [1], the record does not present a precise chronology. It is unclear what time jury selection began and ended or what time the state began presenting evidence. However, testimony must have begun after lunch because there are no references to a lunch break and the State presented only one witness and the partial testimony of another before a five minute recess at 1:40 p.m. Testimony of the State's second witness was completed, the State rested and the defense presented one witness before another short recess at 3:00 p.m. The defense presented another witness and Deaton testified. The final witness for the defense was to have been Robert Bauer, an expert [2] witness. The following colloquy occurred:

---

**1.** Although the record does not reflect the day of the week, we may take judicial notice what day of the week corresponds to a particular date.

**2.** A previous written motion for continuance describes Bauer as "a former supervisor with the Texas Department of Public Safety" and the ap-

THE COURT: ... Do you have any further witnesses, [Trial Counsel]?

[Trial Counsel]: Yes, Your Honor. We have Robert Bauer.

[The State]: Could we call our expert down to listen in case we need her to rebut?

THE COURT: Certainly.

[Trial Counsel]: Mr. Bauer.

(Whereupon, a short recess was taken at 4:15 p.m.)

THE COURT: Let the record reflect that we are back after our afternoon recess. I have just called a ten-minute recess and we actually took a fifteen-minute recess. I have asked [Trial Counsel] to call his next witness and he has asked that he would like to make a motion on the record before I call the jury in. Also present are [State's Attorneys 1 & 2] for the State along with the Defendant. [Trial Counsel].

[Trial Counsel]: Yes. Now comes the Defendant, Greg Deaton, moving the Court to grant a brief continuance in order to allow the hired expert, Robert Bauer, to testify in this cause. Mr. Bauer was subpoenaed to appear on Friday, June the 9th in this cause and has checked in with the Court's clerk this afternoon on June the 12th, approximately an hour and a half ago. However, he is nowhere to be found in the courtroom and the Defendant requests additional time in order to locate him.

THE COURT: [State's Attorney 1]? [State's Attorney 2]? Do you have any response?

[State's Attorney 1]: Your Honor, I believe that we are reaching a point we have been here all day. He has had ample time. He has known about the trial today, so the State is ready to proceed.

THE COURT: I am going to deny your request. We are ready to proceed with the trial. If you have any other witnesses, feel free to call them. But we are ready to go. We are ready to go to trial. Have I not given you an opportunity before the break—You had called Mr. Bauer and

when you couldn't locate him I granted a—I guess it was actually a fifteen–minute recess for you to locate the witness. And during that time evidently you have not been able to locate him; is that correct?

[Trial Counsel]: That is correct, Your Honor.

THE COURT: Is there any other place that you are aware of that has not been checked for Mr. Bauer?

[Trial Counsel]: At this time I cannot think of any other place he would be.

THE COURT: Do you know if he is out having a drink?

[Trial Counsel]: I hope not, Your Honor.

THE COURT: Okay. If you have someplace else you want to briefly call that you can think of.

[Trial Counsel]: The only other place would be my office. I can try one more time.

THE COURT: Call your office. Let's do that.

[Trial Counsel]: He is not there.

THE COURT: Okay. I think at this point the trial needs to proceed. I am going to ask, [Trial Counsel], for you to call your next witness.

[Trial Counsel]: That is all the witnesses we had, Your Honor.

THE COURT: Do you rest?

[Trial Counsel]: We rest, Your Honor.

Thereafter, the jury was charged at 4:35 p.m., they retired to deliberate at 5:05 p.m. and the verdict was returned at 5:30 p.m. At a point in time not clearly indicated by the record, Bauer was located. At a bill of exception Bauer testified he was unsure of the exact time he arrived at the courthouse, but it was probably between 3:30 p.m. and 3:45 p.m. He was waiting outside the courtroom during the trial when he experienced an "attack" and had to immediately locate a restroom. The restroom Bauer located was in the basement. Bauer stated he heard no one call his name while in the restroom. Having finished his business, Bauer returned to the area outside the courtroom. He was unaware the trial had ended.

plication for subpoena describes him as an "in-

toxilyzer expert, chemist, toxicologist."

Deaton relies on TEX.CODE CRIM. PROC. ANN. art. 29.13 (Vernon 1989), which states:

A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

Some cases have stated that to be entitled to an article 29.13 continuance, however, the movant must comply with each of the statutory prerequisites generally applicable to motions for continuance. *See Gentry v. State*, 770 S.W.2d 780, 786 (Tex.Crim.App.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989); *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex.Crim.App. 1995); *Montoya v. State*, 810 S.W.2d 160, 176 (Tex.Crim.App.1989), *cert. denied*, 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991). *See also* TEX.CODE CRIM. PROC. ANN. arts. 29.03, 29.06, 29.07 & 29.08 (Vernon 1989). Of these cases, only *Montoya* actually takes the absolutist position. *Gentry* states the rule, but goes on to discuss the elements of surprise, diligence, the materiality of the absent witness' testimony and the necessity for presenting affidavits or sworn testimony at a motion for new trial. *Matamoros* states the rule, but adds, "Moreover, even if error had been preserved, a trial court's decision to refuse a continuance is reversible only for an abuse of discretion" and concludes no abuse of discretion was shown. *Matamoros*, 901 S.W.2d at 478–79.

This court in *Daigle v. State*, 658 S.W.2d 774, 775 (Tex.App.—Beaumont 1983, no pet.) said:

It is well established that where a motion for continuance is not in writing, signed and sworn to by the movant, it is not error to overrule such motion. [Citations omitted.] It has sometimes been said that the foregoing rule is legal in nature and other such motions may be made under the court's "equitable powers," but in such instance the trial court's action is reviewable only for abuse of discretion. *See Darty v. State*, 149 Tex.Crim. 256, 193 S.W.2d 195

(1946). In applying the so-called "equitable powers" approach, we do not see any abuse of discretion in the trial court overruling the oral continuance motion.

*Darty*, 193 S.W.2d at 195, dealt with an oral motion seeking postponement of the case in order that a witness might inspect stolen property with a view of testifying to its value. The court stated: "The motion, not having been reduced to writing and sworn to, was not a statutory one. It was, therefore, one addressed only to the equitable powers of the court." *Id.*

This idea of an "equitable approach" or seeking an "equitable" rather than a "statutory" continuance has never been expressly rejected by the Court of Criminal Appeals. In *Martinez v. State*, 867 S.W.2d 30, 40–41 (Tex.Crim.App.1993), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994), the court addressed a point of error alleging the trial judge erred in denying an oral motion for a continuance. The court did not take the absolutist position, but analyzed the point of error under TEX.CODE CRIM. PROC. ANN. art. 29.13 (Vernon 1989). The court found, under the circumstances presented, there was not an "unexpected occurrence since the trial began, which no reasonable diligence could have anticipated" and Martinez was not "so taken by surprise that a fair trial [could] not be had." *Martinez*, 867 S.W.2d at 41. Accordingly, the court held the trial judge did not abuse his discretion in denying the oral motion for continuance.

Not only was the equitable concept recognized in *O'Rarden v. State*, 777 S.W.2d 455, 459–60 (Tex.App.—Dallas 1989, pet. ref'd), but the court went on to acknowledge a due process requirement:

While we agree that, as a general rule, a motion for continuance must be in writing and sworn to by a person having personal knowledge of the facts relied upon for the continuance, this rule is not absolute. When a party makes an oral motion for continuance, such motion is not a statutory one but, rather, is addressed to the equitable powers of the trial court. *Darty v. State*, 149 Tex.Crim. 256, 193 S.W.2d 195, 195 (1946); *Daigle v. State*, 658 S.W.2d 774, 775 (Tex.App.—Beaumont 1983, no

pet.). Such an oral motion for continuance is reviewable only for abuse of discretion. *Daigle*, 658 S.W.2d at 775; *see Darty*, 193 S.W.2d at 195. When the circumstances surrounding the trial court's denial of an oral motion for continuance amount to a denial of the rudiments of due process required under both our State and federal constitutions, such denial is subject to appellate review.

The court in *Petrick v. State*, 832 S.W.2d 767, 770–71 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) cited *O'Rarden*, and followed this due process analysis. The court stated: "To determine if appellant's right to due process was violated, it is important to look at the facts leading up to the motion for continuance." *Id.* at 770. The facts of the case show the jury was selected on the afternoon of February 28, 1991. The State put on its first witness Friday, March 1, 1991, at 10:29 a.m. Petrick's attorney knew the State had subpoenaed six witnesses and presumed it would take all day Friday for the State to put on its case. Therefore, he told his alibi witnesses, who were coming from another state, to be in court on Monday, March 4, 1991. After the lunch break, the prosecutor finished her examination of her third witness, then rested her case at 2:30 p.m. Petrick called to the witness stand one of the police officers who investigated the case. After completing the examination of the officer, Petrick's attorney explained to the judge that he was surprised by the State resting so soon, and that his remaining, out-of-state witnesses were unavailable. He then, at 2:45 on a Friday afternoon, made a motion for continuance until Monday morning. The trial court denied the motion, and the defense was forced to rest.

The court observed that although Texas had not adopted the federal standard for determining whether a trial court abused its discretion in denying a continuance to present defense witnesses, it is instructive. Citing *United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir.1976), the court stated the factors under the federal standard: the diligence in interviewing and procuring the witness' presence; the probability of procuring

the testimony within a reasonable time; the specificity of the witness' expected testimony; the degree the testimony is expected to be favorable to the accused; and the unique or cumulative nature of their testimony. In noting that Petrick was asking for a delay of approximately two hours and 15 minutes[3], the court held the trial court abused its discretion by denying the motion for continuance, thereby denying Petrick the opportunity to put on an alibi defense, which may have affected the outcome of the trial.

▮ The State, in its brief, does not take the absolutist position, but initially asserts, without references, there are three factors to weigh when an oral motion for continuance is made because a witness is unavailable: whether the witness' testimony is material, "whether the court knows the reason for the witness' unavailability" and the diligence in procuring the witness' testimony. Furthermore the standard of review is an abuse of discretion. The State discusses their first and third factors.

Under materiality, the State first argues Bauer's affidavit indicated he would have testified about the Intoxilyzer 5000, but there was no evidence of the use of the Intoxilyzer or any breath test. Next they state Bauer's affidavit indicated he would have testified Deaton would not have consumed enough alcoholic beverage to have caused a loss of his normal mental or physical faculties and if it appeared Deaton had lost the normal use of his mental or physical faculties, this was due to errors in the arrest and field sobriety testing. They then argue this testimony might have been slightly favorable, but was not exculpatory and at best only impeachment. Finally, the State argues Deaton failed to exercise reasonable diligence because Bauer was only subpoenaed three days before trial and appeared at 3:00 p.m. rather than at 9:00 a.m., as directed by the subpoena.

A more correct analysis uses the factors discussed in *Petrick:* the diligence in interviewing and procuring the witness' presence; the probability of procuring the testimony within a reasonable time; the specificity of

---

3. Apparently the court was assuming the trial court would have ended its work day at 5:00 p.m.

the witness' expected testimony; the degree the testimony is expected to be favorable to the accused; and the unique or cumulative nature of their testimony in relation to the requirements of article 29.13; some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated and such surprise that a fair trial cannot be had.

Perhaps the State's diligence argument would have merit if Bauer had not been served or had not appeared at all. However, Bauer did appear, did check in with the court, but was temporarily unavailable when actually called to testify. The date the subpoena was issued and the time of Bauer's arrival do not indicate a lack of diligence on Deaton's part. It was Bauer's temporary unavailability that was the unexpected occurrence which no reasonable diligence could have anticipated.

The State's materiality argument is only partially flawed. They are correct that any testimony about the Intoxilyzer 5000 is not material since there was no evidence of the use of the Intoxilyzer 5000 or any breath test. However, Bauer's affidavit indicated he would have testified about the physiological principles of the body as to how alcohol is absorbed and eliminated from the body so it could be shown that Deaton would not have consumed enough alcoholic beverage to have caused a loss of his normal mental or physical faculties. This testimony would have been specific, unique and extremely, certainly more than slightly, favorable to Deaton. This is especially true since Deaton admitted to consuming eight beers during the day[4] and the prosecutor argued: "Do you really think somebody who has had eight beers to drink should be behind the wheel of a car? And do you really think they can be sober?"

Bauer's affidavit also stated he would testify to the various errors with the arrest and field sobriety testing of Deaton that could have shown why he did not have the alleged loss of his normal mental or physical faculties at the time he was operating the motor vehicle due to the consumption of alcoholic beverage. Arguably, this would only be impeachment of the officer's opinion testimony.

Nonetheless it is still material to the issue of intoxication since this testing was a factor in the officer's opinion.

The remaining factor, the probability of procuring the testimony within a reasonable time, is perhaps another way of expressing the State's second factor: "whether the court knows the reason for the witness' unavailability." As previously noted, this witness was not some mere bystander or someone whose whereabouts were completely unknown. *See Franklin v. State*, 858 S.W.2d 537, 539–40 (Tex.App.—Beaumont 1993, pet. ref'd). Bauer was a hired expert who routinely testified in courts, thus the probability of procuring his testimony within a reasonable time was high, if not absolute.

■ Under any analysis, the premise is a balancing test between the public interest in the fair and orderly administration of justice and a defendant's right to call witnesses in his behalf. There is nothing in the record to indicate how continuing the case until the next morning would have a negative impact on the orderly administration of justice. When asked to respond to the motion for continuance the prosecutor stated: "Your Honor, I believe that we are reaching a point we have been here all day. He has had ample time. He has known about the trial today, so the State is ready to proceed." In denying the motion, the judge stated, in pertinent part: "We are ready to proceed with the trial .... we are ready to go. We are ready to go to trial.... I think at this point the trial needs to proceed." Nor did the State, in its response to Deaton's motion for new trial, present any justification for the State's and court's desire to rush to completion.

Using the same assumption of the *Petrick* court, Deaton was, in effect, asking for a continuance of thirty minutes. Even assuming another jury panel was scheduled for the next morning or the court was concerned about inconveniencing the jury by requiring them to return the next day, those concerns must yield to the right to call witnesses and present a defense.

---

**4.** This is in contrast to the usual admission of "two" beers.

The court's denial of the motion for continuance amounted to a denial of due process and was an abuse of discretion. The judgment is reversed. The cause is remanded for a new trial.

REVERSED AND REMANDED